IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CT-3051-FL

| | |
|---|---|
| RONALD MCCLARY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| OFFICER HOLDER and ROBERT ) | |
| BURGESS, ) | |
| ) | |
| Defendants.[1] ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 104). Plaintiff responded in opposition and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants the motion.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on March 9, 2018, asserting claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Following an initial period of frivolity review, plaintiff was allowed to proceed with two Eighth Amendment claims against defendants officer Holder ("Holder") and Robert Burgess ("Burgess"), both of whom were corrections officers at the Maury Correctional Institution during the relevant time period. Plaintiff alleges defendant Holder used excessive force during an altercation in plaintiff's cell. Defendant Burgess allegedly failed to provide plaintiff with a

---

[1] The court dismissed formerly named defendants officer Joyner, Nurse Fuller, Roderick Watson, and Dennis Daniels by separate order entered January 10, 2019.

decontamination shower after he was sprayed with pepper spray and kept plaintiff in restraints for eight hours without providing an opportunity to use the restroom.

Following a period of discovery, and in accordance with the court's case management order, defendants filed the instant motion for summary judgment on July 16, 2020. In support of the motion, defendants rely upon a memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the following: 1) declarations of defendants; 2) incident report dated June 11, 2018; and 3) video recording of the cell extraction involving plaintiff. Plaintiff responded in opposition on August 14, 2020. In support, plaintiff relies upon opposing statement of facts and appendix of exhibits thereto comprised of plaintiff's affidavit and pertinent administrative and medical records.

## STATEMENT OF THE FACTS

Except where otherwise noted, the undisputed facts may be summarized as follows. On December 21, 2017, plaintiff refused several direct orders to move from his cell on the Gray Unit of the Maury Correctional Institution ("Maury C.I.") to a new cell on the Red Unit at that same facility, which houses inmates in the general population. (Holder Decl. (DE 107-3) ¶¶ 5-6; Burgess Decl. (DE 107-1) ¶ 4; Pl.'s App. (DE 122-1) at 34).[2] Because plaintiff refused to leave the cell voluntarily, Maury C.I. corrections officers determined a forcible cell extraction was necessary. (Holder Decl. (DE 107-3) ¶¶ 5-8; Burgess Decl. (DE 107-1) ¶ 4). The extraction team included team leader Sergeant Brandon Bates ("sergeant Bates"), defendant Holder, and five additional corrections officers. (Burgess Decl. Ex. B (DE 107-1) Video M2UO1151 at 00:37-

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

2

00:42, Video M2UO1152 at 00:10-01:08).³

The sequence of events immediately preceding the cell extraction were captured on a video recording. The cell extraction team first positioned themselves outside plaintiff's cell. (Burgess Decl. Ex. B (DE 107-1) Video M2UO1152 at 03:12-3:31). Sergeant Bates instructs plaintiff to "turn around" but immediately thereafter one of the officers thrusts his protective shield towards the small opening in the door of the cell, and Bates announces that plaintiff "has a weapon." (Id. at 03:25-03:34).⁴ Sergeant Bates then states that plaintiff "has a weapon and tried to assault staff" and instructs plaintiff to "turn around and submit to handcuffs [by placing his hands through the door opening]." (Id. at 03:34-03:45). Plaintiff responds, "man shut up, let's just get it over with." (Id. at 03:45-03:48).

Sergeant Bates then instructs one of the officers to administer pepper spray through the door opening, and the officer deploys a short burst of pepper spray lasting approximately one second. (Id. at 03:45-04:01). After giving plaintiff a full three minutes to recover from the pepper spray and comply with the instructions to submit to handcuffs, the officer holding the shield demonstrates its electric shock capacity. (Id. at 04:01-07:53). Sergeant Bates then instructs plaintiff a second time to submit to handcuffs, but plaintiff again refuses to comply. (Id. at 09:05-09:15). At that point, and on sergeant Bates's instruction, one of the officers administers a second burst of pepper spray, for approximately six seconds. (Id. at 09:15-09:26).

Following the second burst of pepper spray, the extraction team gave plaintiff

---

³ The relevant video recordings were filed manually with the clerk of court. (DE 123). The two video files are labeled "M2UO1151" and "M2UO1152" respectively and these labels are maintained in the citations herein.

⁴ Plaintiff asserts in his unverified statement of material facts that he did not have a weapon. (Pl.'s SOMF (DE 121) at 2). Although the recording shows the officer forcefully thrust his shield towards the cell opening in what appears to be a response to plaintiff placing either his hand or a weapon outside the opening, the recording does not clearly show plaintiff holding a weapon. (Burgess Decl. Ex. B (DE 107-1) Video M2UO1152 at 03:25-03:34).

3

approximately five minutes to recover and comply with their instructions to submit to handcuffs. (Id. at 09:26-14:14). Sergeant Bates then instructed plaintiff to submit to handcuffs for a third time but plaintiff again refused to comply. (Id. at 14:09-14:21). The extraction team entered plaintiff's cell at that point, and the video recording did not capture the precise events that occurred within plaintiff's cell. (Id. at 14:29-16:49). Plaintiff testifies in his affidavit that defendant Holder "use[d] excessive force" during the extraction process. (Pl.'s Aff. (DE 122-1) at 47). In a witness statement completed during the Department of Public Safety ("DPS") investigation, plaintiff claimed that defendant Holder "beat" him while he was in full restraints on the floor. (Pl.'s App. (DE 122-1) at 33).

The officers escorted plaintiff to a nursing station after removing him from his cell, during which time plaintiff looks directly at the officers and states "round one." (Burgess Decl. Ex. B (DE 107-1) Video M2UO1152 at 16:49-18:21). When plaintiff arrived at the nursing station, his blood pressure was 183/110, his heart rate was 138, and he appeared in pain. (Pl.'s App. (DE 122-1) at 10-11, 13). Defendant Burgess, a supervising officer, did not ensure that plaintiff received a decontamination shower as required by DPS policy when pepper spray is administered. (Pl.'s Aff. (DE 122-1) at 47). Plaintiff also was left in restraints for eight hours and unidentified officers did not provide plaintiff with restroom breaks, causing him to urinate on himself. (Pl.'s App. (DE 122-1) at 33). Plaintiff injured his back and shoulder during the incident. (Id. at 15).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4

Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace

5

v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

The court begins with plaintiff's claim that defendant Holder used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the forced used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 10 (1992). Here, defendant Holder does not argue the use of force was nontrivial, and thus the court proceeds to the subjective component of the claim.

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an excessive force case, "the 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)). The relevant inquiry for the subjective prong is whether the force was applied "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113. The "question is not whether a

6

reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113. "Corrections officers act in a 'good faith effort to maintain or restore discipline' – that is, with a permissible motive – not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." Id. (quoting Hudson, 503 U.S. at 6-7); see also Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). "But corrections officers cross the line into an impermissible motive – using force 'maliciously' and for the 'very purpose of causing harm,' – when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113 (quoting Whitley, 475 U.S. at 320-21); see also Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996).

At the summary judgment stage, "the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320-21). The officers' subjective motive may be proved through direct or circumstantial evidence. Id. at 308-09; Brooks, 924 F.3d at 114-16. With respect to circumstantial evidence, the court considers four factors "from which . . . inferences may be drawn as to the officers' motives." Brooks, 924 F.3d at 116. These factors are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 321).

Here, plaintiff's claim against defendant Holder is premised on allegations that Holder used excessive force during the extraction procedure. (Am. Compl. (DE 76) at 1; Aug. 6, 2019, order (DE 82) at 2-3). As noted above, the video recording does not show the altercation that occurred inside plaintiff's cell prior to the extraction. Plaintiff's testifies by affidavit[5] that defendant Holder "use[d] excessive force" during the extraction process. (Pl's Aff. (DE 122-1) at 47). Plaintiff also relies upon his own witness statement from the DPS investigation, in which he claimed defendant Holder "beat" him while he was in full restraints on the floor. (Pl.'s App. (DE 122-1) at 33).[6]

Turning to the subjective component of plaintiff's Eighth Amendment claim, the only direct evidence that defendant Holder used force maliciously or for the very purpose of causing harm is plaintiff's conclusory assertion that defendant Holder "beat" plaintiff while he on the floor in full restraints. (Id.). While it is true that "the use of force on an inmate who is 'restrained and compliant and posing no physical threat' raises the specter of . . . an impermissible motive," see Dean, 984 F.3d at 302 (quoting Thompson v. Virginia, 878 F.3d 89, 102 (4th Cir. 2017)), plaintiff must come forward with "specific" evidence supporting this assertion to defeat defendant Holder's motion for summary judgment. See Sedar v. Reston Town Ctr. Prop., LLC, __ F.3d __, 2021 WL 667088, at *3 (4th Cir. 2021) ("[T]he nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue." (citing

---

[5] As the court previously has explained to plaintiff, he cannot rely on unverified allegations in his statement of material facts or responsive briefing to create a triable issue of fact. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; (See Roseboro Notice (DE 109)). Accordingly, the court does not consider plaintiff's unverified allegations in resolving defendants' motion for summary judgment.

[6] Notably, defendant Holder was not responsible for deploying pepper spray into plaintiff's cell. (Burgess Decl. Ex. B (DE 107-1) Video M2UO1152 at 00:08-1:02, 03:45-04:01, 09:15-09:26 (establishing a different officer deployed the pepper spray on sergeant Bates's orders)). And plaintiff does not attempt to argue otherwise.

Celotex, 477 U.S. at 323)); Wai Man Tom v. Hospitality Ventures, 980 F.3d 1027, 1037 (4th Cir. 2020) (explaining "conclusory allegations . . ., without more, are insufficient to preclude granting the summary judgment motion").

Plaintiff's assertions that he was "beaten" while fully restrained and that defendant Holder "used excessive force" are far too conclusory to create a genuine issue of fact. (See Pl.'s Aff. (DE 122-1) at 47; Pl.'s App. (DE 122-1) at 33). Plaintiff's assertions, for example, do not describe the sequence of events that precipitated the use of force or his placement in restraints (which was not captured on the recording), nor does plaintiff suggest that he was compliant after he was placed in restraints. Plaintiff also does not meaningfully respond to defendant Holder and the remaining witnesses' explanation that plaintiff possessed a homemade knife during the altercation and attacked the officers when they entered his cell. (See Incident Report (DE 107-2) at 1-4; Holder Decl. (DE 107-3) ¶¶ 13-18).[7] As a result, plaintiff fails to offer specific evidence establishing he was "restrained and compliant and posing no physical threat" at the time of the use of force. See Dean, 984 F.3d at 302, 305 (emphasis added). The court also cannot draw such inferences in plaintiff's favor based on the conclusory assertions in his affidavit and witness statement. See Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence [to withstand a motion for summary judgment].").

Plaintiff also does not identify any statements by the officers, before or after the

---

[7] As noted above, although plaintiff disputes that he possessed this weapon in his responsive statement of material facts, he points to no record evidence or sworn testimony supporting these assertions. (See DE 121 at 2-3).

9

extraction, suggesting an impermissible retaliatory or malicious motive. See Dean, 984 F.3d at 307-08 (holding plaintiff's evidence – in the form of a "sworn and detailed attestation" – asserting defendants stated during the altercation that plaintiff "done [expletive] up" along with other circumstantial evidence created triable issue of fact with respect to subjective component of plaintiff's excessive force claim); Brooks, 924 F.3d at 115 (explaining reasonable jury could take into account defendants' statements complaining about plaintiff's disrespectful attitude and threats to sue the officers when deciding whether the officers acted "maliciously and in retaliation for [the plaintiff's] insubordination and threats to sue"). And, importantly, the video recording (which has sound) contains no such direct evidence of malicious motive. (See generally Burgess Decl. Ex. B (DE 107-1) Video M2UO1152). Plaintiff therefore has not offered sufficient direct evidence that defendant Holder acted with malice during the altercation in plaintiff's cell.

Nor can the court infer an impermissible motive under the Whitley factors.[8] Indeed, the court cannot conduct a meaningful review of the Whitley factors where the only evidence plaintiff offers is the conclusory assertion that defendant Holder "beat" plaintiff while fully restrained. (See Pl.'s App. (DE 122-1) at 33). Because plaintiff fails to offer a sworn and detailed account

---

[8] To the extent plaintiff asserts that the extraction itself constituted excessive force, plaintiff fails to offer competent evidence contesting the defendants' version of the extraction. And on defendants' account, they are entitled to summary judgment under the Whitley factors. The need for application of force and the extent of any reasonably perceived threat was clear in these circumstances: plaintiff possessed a weapon and he refused to comply with the officers' instructions to submit to handcuffs on multiple occasions. (Burgess Decl. Ex. B (DE 107-1) Video M2UO1152 at 03:25-03:45; Holder Aff. (DE 107-3) ¶¶ 13-18; Incident Report (DE 107-2) at 1-4). The officers made numerous efforts to temper the severity of the force used, by giving verbal instructions to submit to restraints and deploying pepper spray, but plaintiff repeatedly refused to comply. (Burgess Decl. Ex. B (DE 107-1) Video M2UO1152; Holder Aff. (DE 107-3) ¶¶ 13-18; Incident Report (DE 107-2) at 1-4). And where plaintiff threatened the officers with a homemade knife and refused numerous direct orders to submit to restraints, the extraction itself appears to be a proportionate response given the threat plaintiff posed here. (See Incident Report (DE 107-2) at 1-4). On this record, no reasonable jury could conclude defendants acted maliciously and for the very purpose of causing harm in extracting plaintiff from the cell. See Dean, 984 F.3d at 302; Brooks, 924 F.3d at 117 ("[A] manifest and immediate need for the protective use of force gives rise to a powerful logical inference that officers in fact used force for just that reason.").

of the incident, the court cannot determine whether defendant Holder reasonably perceived a threat from plaintiff (even in restraints), the relationship between the need and the amount of force used, or whether any efforts were made to temper the severity of the response. See Whitley, 475 U.S. at 321. This case, therefore, is distinguishable from both Dean and Brooks where plaintiff has failed to put forward sufficient evidence to create a triable issue of fact with respect to the Whitley factors. See Dean, 984 F.3d at 307 (noting plaintiff produced a "sworn and detailed attestation" contesting the officers' account of the incident); Brooks, 924 F.3d at 114-16 (describing record evidence supporting the plaintiff's version of the altercation). Accordingly, on this record, there is insufficient evidence from which "a reasonable jury could determine that [defendant Holder] acted with malice, applying force punitively and for the very purpose of causing harm." Dean, 984 F.3d at 302 (internal quotation omitted); see also Wai Man Tom, 980 F.3d at 1042.

The court now turns to the claims against defendant Burgess, the supervising officer. Plaintiff's amended complaint alleges defendant Burgess failed to instruct the officers to give plaintiff a decontamination shower after twice deploying pepper spray, and to give him a restroom break while he was in full restraints for eight hours. (DE 56 ¶ V). Defendants argue that the record contains no evidence that defendant Burgess was personally involved in the failure to provide a decontamination shower, or the placement in restraints. (Defs' Mem. (DE 105) at 7-8). In response, plaintiff offers no competent evidence supporting the assertion that defendant Burgess was responsible for the alleged failure to give a restroom break. (See Pl.'s App. (DE 122-1); Pl.'s SOMF (DE 121)). Accordingly, defendant Burgess is entitled to summary judgment with respect to this claim. See Matsushita, 475 U.S. at 586-87.

Plaintiff testified in his affidavit that defendant Burgess was responsible for failing to

11

provide a decontamination shower, and the court therefore adopts plaintiff's account for purposes of ruling on the instant motion. (Pl's Aff. (DE 122-1) at 47). The decontamination shower claim effectively challenges plaintiff's conditions of confinement. To establish an Eighth Amendment claim challenging his conditions of confinement, plaintiff must "show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). As to the first objective prong, "a prisoner must [demonstrate] 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (quoting Strickler, 989 F.2d at 1381). The subjective prong of a conditions of confinement claim "is satisfied by a showing of deliberate indifference by prison officials" which requires that a prison official "actually know of and disregard an objectively serious condition, medical need, or risk of harm." Id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)).

Here, plaintiff offers no evidence establishing that he suffered a serious physical or emotional injury (or was at substantial risk of such injury) based on the failure to provide a decontamination shower.[9] And "[t]his is not the kind of extraordinary case of a palpable deprivation of the minimal requirements of civilized existence in which an inference of serious injury might be reasonable." See Strickler, 989 F.2d at 1381-82 (requiring plaintiff to provide specific facts demonstrating injury or substantial risk thereof in conditions of confinement case to

---

[9] Although plaintiff's appendix includes numerous medical records, this evidence does not establish plaintiff's medical conditions were related to defendant Burgess's alleged failure to provide a decontamination shower. (See Pl.'s App. (DE 122-1) at 10-21).

12

survive motion for summary judgment). Furthermore, for the reasons discussed in detail above, plaintiff's conclusory assertion that defendant Burgess failed to ensure he was provided a decontamination shower is insufficient to establish a triable issue of fact with respect to whether defendant Burgess knew of and disregarded a substantial risk of harm to plaintiff. See Wai Man Tom, 980 F.3d at 1042; Dash, 731 F.3d at 311. Defendant Burgess therefore is entitled to summary judgment on plaintiff's claims.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 104) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 22nd day of March, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge

13